# IN THE COURT OF APPEALS OF IOWA

No. 20-1586
File March 3, 2021

**IN THE INTEREST OF C.W., B.W., and I.W.,**
**Minor Children,**

**A.W., Mother,**
          Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Mark C. Cord III,

District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

T. Cody Farrens of Fankhauser, Farrens, & Rachel, P.L.C., Sioux City, for

appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

Joseph W. Kertels of Juvenile Law Center, Sioux City, attorney and

guardian ad litem for minor children.

Considered by Bower, C.J., and Doyle and Mullins, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights. We find reasonable efforts were made to reunite the family, clear and convincing evidence supports termination, and termination is in the children's best interests. We affirm.

**I. Background Facts and Procedures**

A.W. is the mother of B.W., born in 2015; C.W., born in 2017; and I.W., born in 2019.[1]

The family was first involved with the department of human services (DHS) beginning in October 2015 because of the mother's marijuana use while pregnant with the oldest child. The child was adjudicated a child in need of assistance (CINA) in March 2016. The child was placed in foster care due to the mother's continued use of marijuana and alcohol. The mother completed treatment in July 2016, and the child was returned to the mother's care. In March 2017, the CINA proceeding was dismissed.

In January 2018, a new DHS investigation began due to reported drug use in the family's house. There were concerns of drug use by both the mother (marijuana) and the legal father (methamphetamine). The investigation resulted in CINA adjudications in April 2018 for the older two children, but they were not removed from the home. The children tested positive for cannabinoids in May.

---

[1] C.D.W., the legal father of the children, had his parental rights terminated as to all three children. The biological father of C.W. has also had his parental rights terminated. The biological father of I.W. has been granted an additional six months to reunite with I.W. This appeal concerns only the mother's parental rights.

On June 6, the mother began an outpatient-treatment program. The children remained in the mother's custody due to her participation in services and the progress she made.

In September, the mother alleged there had been a physical altercation with her father's significant other. The responding officer performed an alcohol sobriety test, which the mother failed. The children were in the home under the mother's care at the time. After the incident, the mother did not report her alcohol use to her treatment program providers, but she did participate more often and eventually completed the program in March 2019.[2]

Following a permanency hearing in March, the juvenile court found "the least restrictive, most appropriate permanency option" was for the children to remain in the mother's care with protective supervision by DHS and allow the legal father additional time to work toward reunification.

In early July 2019, the biological father of C.W. had his parental rights terminated. The court ordered a dispositional review/dismissal hearing for the mother to take place in five months.

On July 11, the mother—while pregnant with I.W.—tested positive for marijuana. She tested positive again the next week when I.W. was born. Two days after I.W.'s birth, a CINA petition was filed for the youngest child, and the child was adjudicated CINA on September 10. All three children were removed

_____

[2] The mother reported sobriety and treatment participation to the family services consultant and treatment providers that did not match police reports or program records.

from the mother's custody on September 10. The children were placed in the legal father's custody.

The mother's drug and alcohol tests in August, September, and October were negative for all tested substances. The mother cared for the children at the father's house from 6:00 a.m. until 9:00 p.m. while he was working.

On November 16, at approximately 5:00 a.m., law enforcement responded to a 911 call by the mother, reporting the legal father assaulted her while in the oldest child's presence. Methamphetamine was found in the home, and the legal father was arrested on multiple charges. All three children were removed from the legal father's custody on November 19, and drug tests on the older two children were positive for methamphetamine.[3] The mother was also tested and was negative for methamphetamine. The children were placed in the home of the mother's grandmother ("grandmother"), where the mother was also staying. The mother requested custody of the children be returned to her.

On December 9, genetic testing determined M.T. was the biological father of I.W. M.T. requested custody of I.W. The DHS case plan for December noted the mother's progress since the July removal and recommended a dispositional review hearing in five months. On December 23, custody of the children was transferred to DHS and for placement with a relative (not a parent) or foster care. The children were placed with a relative of the legal father. In late January, the children were moved to the grandmother's home.

---

[3] The youngest child did not have enough hair to submit for testing.

In February 2020, the mother failed to appear for a requested drug test and lied about working during the time the test was requested. In early March, DHS discovered the mother was staying at the grandmother's home—the children's placement—without approval from DHS or the children's guardian ad litem. The children were moved to other relative placements.

At a May drug test, after discovering it would be a hair-stat test instead of a urinalysis, the mother excused herself to make a call, left the testing site for two hours, washed her hair, and then returned to submit her hair for the drug test. At a May 19 visit, the mother had a black eye, bruises, and a broken thumbnail, but she assured the family services consultant the injuries were caused by a fall down the stairs. DHS updated its case plan in May, again noting the mother "continues to make progress towards her case plan goals" and recommending another five months of supervision. The dispositional review hearing was continued to July.

On June 9, a petition to terminate the legal father's parental rights was filed.

At her June 17 drug testing, the mother "appeared to attempt to tamper with" her urinalysis, which came back negative. The next day, she refused to submit another sample, claiming to be sick and indicating it could be COVID-19. At that time, her visits with the children (three days a week for several hours each) were suspended until she could be tested for COVID-19.

At a substance-abuse assessment on June 25, the mother admitted to relapsing on marijuana and alcohol, smoking every other day and drinking daily.[4]

---

[4] At a July13 permanency hearing, the mother testified she was drinking heavily with I.W.'s biological father. She also testified she only relapsed on marijuana the day before she entered the treatment program and the assessment was incorrect.

The mother testified the evening of June 25, she was drinking with M.T. and was assaulted by another woman, giving her a black eye. On June 30, the mother entered an inpatient rehabilitation center. She did not tell DHS she was entering the treatment program. She began video visits with the children the second week of July.[5]

On July 1, DHS updated its case plan, now noting the mother's struggle with honesty and substance abuse.

On July 13, at a permanency hearing, the DHS case manager was asked what barriers she saw to placing the children with the mother at her treatment program. The case manager stated the mother needed more than two weeks of sobriety, needed to continue with the video visits, was to be honest and forthcoming, and needed to complete all the tasks in the court order. The case manager also expressed concern that the mother was drinking heavily when she was having four visits a week with the children in May and June. The case manager stated she did not want to move the children from their placement without knowing the mother would stay committed to the treatment process. At no point in the proceedings did the mother maintain employment for more than a few months. She relied on her family and the legal father to provide housing and did not maintain her own residence.

On July 20, the State filed a petition to terminate the mother's rights.

On August 14, the mother filed a motion to return the children to her custody and requested additional services focused on the noted barriers toward

---

[5] The treatment facility's policy limited visitation to video visits due to COVID-19.

reunification. On August 21, the mother completed the inpatient treatment program and moved briefly to the grandmother's home. She was scheduled to move into an apartment in a structured-living community with on-site outpatient programming.

A hearing was held on permanency and termination of the mother's parental rights on August 24, 27, and 28.

The court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(f) (2020) (as to B.W.), 232.116(1)(h) (as to B.W. and I.W.), 232.116(1)(i) (all), and 232.116(1)(*l*) (all).

## II. Standard of Review

"Our review in proceedings to terminate parental rights is generally de novo." *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). "There must be clear and convincing evidence of the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Clear and convincing evidence means there are "no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (alteration in original) (citation omitted). The paramount concern in termination proceedings is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis

On appeal, the mother raises several issues. First, she claims DHS failed to make reasonable efforts toward reunification. Next, she asserts the State failed to establish any of the grounds for termination. Finally, she claims termination of her rights is not in the best interests of the children.

**Reasonable Efforts.** The mother claims that by refusing to place the children with her in the treatment facility after the petition to terminate her parental rights had been filed, DHS failed to make reasonable efforts.

"DHS is to provide 'every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child.'" *L.T.*, 924 N.W.2d at 528 (quoting Iowa Code § 232.102(7)). This obligation "runs until the juvenile court has entered a final written order of termination." *Id.* "[R]easonable efforts can, and often do, include efforts toward reunifying a family, but the child's health and safety are paramount and conditions precedent to these efforts." *Id.* at 529

For years, DHS case plans and the juvenile court orders stated the actions the mother had to comply with in order for the children to be returned to her. These expectations fluctuated throughout the juvenile court proceedings depending on the mother's state of sobriety and her participation with services. The mother has an addiction cycle consisting of treatment and relapse, with her most recent relapse ending less than two months before she requested the children's return. She refused some of the services offered until she realized termination was imminent. We find DHS has made reasonable efforts to reunite the mother and children.

**Grounds for Termination.** The mother next asserts the State failed to establish each of the grounds of termination. "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *In re T.S.*, 868 N.W.2d 425,

435 (Iowa Ct. App. 2015). We will consider the termination of the mother's parental rights under section 232.116(1)(f) and (h).

Under Iowa Code section 232.116(1)(f), the court may order the termination of parental rights to a child when all the following apply:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Paragraph (h) is the corresponding section for children "three years of age or younger" with a removal time of six of the last twelve months or six consecutive months. Iowa Code § 232.116(1)(h).

The mother only contests the last element, asserting the children could have been returned to her care at the time of the termination hearing. She argues she had fifty-five days of sobriety, had successfully completed inpatient treatment, and had arranged for housing for herself and the children in a structured-living facility that would provide her with outpatient treatment. The State counters that this is a "last-minute" attempt at sobriety, the mother's history of failing to maintain sobriety outside of treatment did not bode well for success now, and she had not progressed through the stages of visitation to allow the children to return to her care full-time.

The juvenile court noted the mother's inability or unwillingness to stabilize her life after five years of services and found clear and convincing evidence that

her prognosis prevented the children's return to her custody. While the mother might eventually be able to maintain her sobriety and safely parent the children in her home, she was drinking heavily and used marijuana less than two months before the termination hearing—while she was still enrolled in a continuing substance-abuse program. We find clear and convincing evidence shows the children could not be safely returned to the mother at the time of the hearing. We affirm the juvenile court's termination of the mother's rights under Iowa Code section 232.116(1)(f) and (h).

**Best Interests of the Children.** The mother claims termination of her parental rights is not in the best interests of the children. In evaluating whether termination is in the children's best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (citations omitted). Parenting "must be constant, responsible, and reliable." *Id.* at 777 (citation omitted). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (citation omitted).

The mother has been in and out of substance-abuse treatment since 2015—when the oldest child was born—and each time relapsed after a period of time. For years she remained in an abusive relationship with her husband while having relationships with other men when he was in prison. She has historically lied to and misled DHS and service providers about her alcohol and marijuana use. She blamed her alcohol and marijuana abuse on others instead of taking responsibility for herself.

Despite five years of services and accompanying warnings that the CINA proceedings could result in the termination of her parental rights, she has been unable or unwilling to maintain sobriety for more than a few months at a time. While the mother and the children love each other, the mother has had two and a half years of services in the most recent CINA action to establish a safe, stable, and substance-free home for her children, but did not. Only after the State filed a petition to terminate her husband's parental rights did she take action, arrange to enter a treatment program, and set up housing in a drug-free setting. The juvenile court described her latest effort at treatment as "commendable, but too little, too late."

We agree with the juvenile court. These children have been shuffled around among multiple homes and caregivers for years. They deserve a safe, stable, and permanent home. We find it is in the children's best interests to terminate the mother's parental rights.

The mother does not argue any of the permissive exceptions to termination under Iowa Code section 232.116(3) apply. *See P.L.*, 778 N.W.2d at 40 (setting forth three steps for the court to consider in the process of terminating a parent's

rights). The juvenile court found none of the circumstances set forth in section 232.116(3) applied, and we agree. Consequently, we affirm the termination of the mother's parental rights.

**AFFIRMED.**